# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KELLY LERAY BARNES | CIVIL ACTION |
| VERSUS | NO. 09-3352 |
| SHERIFF ROBERT CROWE ET AL. | SECTION "R" (2) |

# REPORT AND RECOMMENDATION

Plaintiff, Kelly LeRay Barnes, is a prisoner currently incarcerated in the Concordia Parish Correctional Facility in Ferriday, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against four defendants, Washington Parish Sheriff Robert Crowe; Demille Topps, warden of the Washington parish Jail; Kim Brumfield and Deputy Sheriff Chaplain. Barnes asserts that he was subjected to excessive force during his arrest, provided with inadequate medical care for injuries suffered during the excessive force incident, and maliciously prosecuted and subjected to public humiliation in connection with a fabricated escape allegation. He seeks monetary damages and injunctive relief. Record Doc. No. 1 (Complaint at Attachment to ¶ IV, V).

On August 18, 2009, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Craig Frosch, counsel for defendants. Plaintiff was

sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Barnes testified that he is currently incarcerated in the Concordia Parish Correctional Facility in Ferriday, Louisiana, based upon his conviction on July 15, 2009, on charges of possession of firearms, possession of cocaine and escape. He testified that he is serving a ten-year prison sentence on the possession charges with an extra year in prison on the escape charge, for a total of eleven years. He stated that his conviction has been affirmed by the state appeal court, but his appeal to the Louisiana Supreme Court is ongoing.

Plaintiff confirmed that he asserts three separate claims in this case: (1) On May 1, 2008, he was subjected to excessive force by arresting officers, including particularly defendant Chaplain, when he was apprehended after his escape from custody. (2) He received inadequate medical care for the injuries he suffered as a result of the excessive force, including brain damage and injury to one of his eyes. (3) He was maliciously prosecuted and subjected to public humiliation during a subsequent, fabricated escape charge during a court appearance in March 2009.

I have previously concluded that Barnes's written submissions, coupled with his testimony, are sufficient to state claims upon which relief might be granted under Section

1983 for excessive force and inadequate medical care, all requiring further proceedings in this court. Record Doc. No. 27. This report and recommendation is limited to his third claim related to the March 2009 escape allegations, which – for the reasons set out in this report – I recommend should be dismissed.

As to his claim that a second escape charge was fabricated against him in March 2009, Barnes wrote in his written complaint, Record Doc. No. 1 (hand-written attachments to "Part IV Statement of Claim"), that on March 24, 2009, he was scheduled to go to court for arraignment on the original escape charge that was then pending against him and on which he subsequently pled guilty. He alleged that his attorney was told "that Barnes would not be coming to court because he was involved in an elaborate escape plan that was suppossed (sic) to take place that same day." Barnes stated that later that same afternoon, he and a co-defendant "were escorted across the street for arraignment on the escape charge" and that he "was physically held onto while being escorted to a squad car outside the side of the jail." He alleged that one sheriff's deputy "walked outside the car with a pump shotgun, and cleared all pedestrians and traffic, along with other sherifs (sic) officers with earpieces and vests on. . ." He wrote that during this operation defendant "Warden Topps told all pedestrians in the path to 'move or go to jail,'" and that numerous other officers were also on the scene while he was escorted under heavy guard in full public view into the courthouse, where "all civilians were

3

cleared out of the building." He alleged that "the judge had been alerted that there was supposed to be an aggravated escape attempt by Barnes, co-defendant, and another inmate." He wrote that following his arraignment, he was "transported back to the jail in the same manner they came" but that "no one has been questioned or charged for the [aggravated escape] accusations." Id.

Plaintiff's oral testimony concerning the March 2009 escape charge confirmed the material allegations in his written complaint. Barnes testified that the March 24, 2009, incident was unrelated to the original escape charge against him arising from his 2008 arrest, as to which he was subsequently convicted based upon his guilty plea. He stated that sheriff's deputies, including defendants Topps and Chaplain, unjustifiably acted on that date as if "I was planning some elaborate escape and there was supposed to be guns blazing and somebody was supposed to be coming to break me out." He testified that the sheriff's office had a SWAT team standing by "as if I was some type of serial killer or something." He stated that the officers on the scene "put on a big show," and one of the deputies "told everybody that I was planning an escape that day, but I know he doesn't have any evidence of this."

Barnes complained that the actions of the deputies that day "made it look real bad if I had a potential juror or something." He acknowledged that he was never charged with any new escape. Asked what damage or injury he suffered as a result of the incident,

4

Barnes said, "It was public humiliation, and I feel like it was malicious prosecution because it made me look real bad in front of the judge and the whole town. If anybody would have found out that would have been on the jury or if I went to trial," it would have been damaging. Barnes conceded, however, that there never was a jury or a trial in his case because he plead guilty to all charges. "I felt that it was like malicious prosecution by him [defendant Chaplain, the same deputy whom Barnes alleges beat him during the excessive force incident on May 1, 2008] trying to make me look like I was a very dangerous criminal in the eyes of the judge, and he was trying to make the judge biased against me. . ."

## ANALYSIS

I. STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

5

clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly

identify and authenticate documents." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's single claim alleging malicious prosecution and public humiliation arising from his March 24, 2009 court appearance may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an

arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of this claim, while his remaining two claims based upon excessive force and inadequate medical care must proceed.[1]

II.     NO PHYSICAL INJURY

Plaintiff's claim concerning his March 24, 2009 court appearance is deficient under Section 1983 because he fails to allege "physical injury" sufficient to support his claim for monetary damages. Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e): "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury." (Emphasis added). The only injury alleged by Barnes in connection with this particular claim – which is separate and distinct from the physical injuries allegedly resulting from his excessive force and inadequate medical care claims – is "public humiliation."

In recent decisions, the Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible emotional or psychological harm, such as has been alleged by Barnes in this case. Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007); Geiger v. Jowers, 404 F.3d

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

371, 374-75 (5th Cir. 2005); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001). The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" Alexander v. Tippah County, 351 F.3d 626, 631 (5th Cir. 2003) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar, 112 F.3d at 193). Thus, in Alexander, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they had suffered were nausea and one incident of vomiting. Id. Similarly, in Siglar, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury. Siglar, 112 F.3d at 193.

In this case, Barnes has not alleged any physical injuries of any kind as a result of the March 24, 2009 incident. As Section 1997e(e) provides and Fifth Circuit case law makes clear, he is precluded as a matter of law from recovering damages for the psychological or other emotional injury he has asserted.

### III. NO MALICIOUS PROSECUTION

Barnes claims that he was maliciously prosecuted and subjected to public humiliation in connection with the fabricated escape allegation in connection with his March 2009 court appearance. He concedes, however, that no new escape charge was actually lodged against him. The law in the Fifth Circuit concerning the assertion of a malicious prosecution claim under Section 1983 changed significantly with the en banc

9

decision of the court in Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003). Under the Fifth Circuit's case law before Castellano, which the Fifth Circuit itself had described as "confused and confusing," Gordy v. Burns, 294 F.3d 722, 725 (5th Cir. 2000), a plaintiff could assert a claim for malicious prosecution under Section 1983 simply by alleging the elements of the state law tort of malicious prosecution in the state where the deprivation of civil rights had occurred. Formerly, the Fifth Circuit had stated: "[T]he rule in this circuit is that the elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of 'Fourth Amendment malicious prosecution' are coextensive." Id.

Thus, in the federal courts of Louisiana, a Section 1983 plaintiff "had to prove the six elements of malicious prosecution under Louisiana tort law: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." Id. at 727 (citations omitted).

In Castellano, the en banc Fifth Circuit analyzed Gordy and other precedents and found that the "weak discipline" of those cases "has permitted the blending of state tort and constitutional principles." Castellano, 352 F.3d at 945. "With hindsight, our precedent governing § 1983 malicious prosecution claims is a mix of misstatements and

omissions which leads to the inconsistencies and difficulties astutely pointed to in Judge Barksdale's dissent from the panel opinion . . . ." Id. at 949.

The Castellano court held that a malicious prosecution claim under Section 1983 based on the elements of state law tort lacks any constitutional underpinning. Thus, "we conclude that no such freestanding constitutional right to be free from malicious prosecution exists. This conclusion in turn means that we must insist on clarity in the identity of the constitutional violations asserted." Id. at 945.

Judge Duval of this court cogently summarized the reasoning and holdings of Castellano as follows.

> In Albright v. Oliver, 510 U.S. 266, . . . (1994), the Supreme Court held that it is the Fourth Amendment, and not substantive due process, under which malicious prosecution claims must be judged. Id. at 270. The Court held specifically:
>> Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."
>
> Id. at 273. Sitting en banc, the Fifth Circuit has interpreted the Albright v. Oliver holding to mean that "the assertion of malicious prosecution states no constitutional claim." Castellano, 352 F.3d at 953.
> In Castellano, the Fifth Circuit held that "'malicious prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." Id. at 942. "[N]o such freestanding constitutional right to be free from malicious prosecution exists." Id. at 945. The court stated further:
>> The initiation of criminal charges without probable cause may set in force events that run afoul of explicit

11

> constitutional protection–the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued. Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983. Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion.

Id. at 953-54. In requiring that the "anchor of constitutional claims be visible," the Court stated further that "we must insist on clarity in the identity of the constitutional violations asserted." Id. at 960, 945. In sum, the elements necessary to maintain a malicious prosecution . . . are not necessarily adequate to allege a constitutional violation sufficient to invoke § 1983.

Barnes has failed to allege any due process or other constitutional violation in connection with his March 2009 court appearance. His claim of malicious prosecution under Section 1983 must be dismissed for failure to state a claim.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's claim related to the March 2009 escape allegations be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), while his remaining claims asserting excessive force and inadequate medical care are subjected to further proceedings.[2]

---

[2] A trial date and related schedule on my calendar concerning these remaining claims have already been set. Record Doc. No. 27.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __17th__ day of September, 2009.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　JOSEPH C. WILKINSON, JR.
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE